UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **GOVERNMENT'S RESPONSE TO** |
| v. | ) **CITY OF MINNEAPOLIS'S** |
| | ) **MOTION TO QUASH SUBPOENA** |
| 2.   TOU THAO, | ) |
| 3.   J. ALEXANDER KUENG, and | ) |
| 4.   THOMAS KEIRNAN LANE, | ) |
| | |
| Defendants. | |

The United States of America, by and through its undersigned attorneys, responds to the City of Minneapolis's (City) Motion to Quash Subpoena and Memorandum in Support Thereof. ECF Nos. 183-184. For the following reasons, the government requests this Court deny the motion and order the City to produce a limited portion of the originally requested records.

## Background

On December 28, 2021, the United States served a trial subpoena on the Minneapolis Police Department (MPD), pursuant to Rule 17 of the Federal Rules of Criminal Procedure. The federal subpoena requested personnel and disciplinary information about twelve MPD employees who appear on the witness lists in this case:[1]

---

[1] Throughout this criminal investigation, the United States has previously subpoenaed MPD eleven (11) times for employment records of other MPD officers. The City never moved, or threatened to move, to quash those subpoenas. Nor has the City ever cited privacy or the Minnesota Government Data Practices Act (MGDPA) as a reason to avoid

On January 5, 2022, after the subpoena was served, the City notified the United States that it intended to move to quash the subpoena. The City asserted that the MDGPA—a Minnesota state law—and privacy precluded compliance with federal law. From January 5 to January 7, 2022, the United States attempted to negotiate with the City to assuage its concerns and avoid needless litigation. First, the United States agreed to pare down its overall request.[2] To accomplish this, the City described some of the contents of particular sections and files to the United States. With that knowledge, the United States stated it would be satisfied if the City provided the public and non-public data for the requested employees for (1) disciplinary actions; (2) employment history; (3) assignment history;

---

compliance with a lawfully served federal subpoena. At each instance, MPD complied with the subpoena and provided the requested data and/or information.

[2] The United States originally requested:

(1) PERSONNEL RECORDS: All personnel files in any form and regardless of caption concerning the below listed current or former MPD employees. Responsive materials include, but are not limited to: applications for employment; medical forms; evaluations; performance reviews; personal and professional references; commendations; awards; any other administrative actions; tests; reviews; promotions; certifications; correspondence; memoranda; and any other written documents; and

(2) COMPLAINT/DISCIPLINARY RECORDS: All records in any form regardless of caption pertaining to any complaint (including but not limited to internal affairs complaints), investigation, report or other proceeding, concerning the conduct of the below listed current or former MPD employees. Responsive materials include, but are not limited to: documents, interrogatories, logs, photographs, videos, audiotapes, 911 recordings, incident reports, CAD/PIMS reports, use of force reports, witness statements, and any and all investigative materials collected in connection with the investigation(s).

(4) MPD Policy and Procedure(s) violated; (5) employee profile cards; (6) any final discipline paperwork; and (7) case summaries for instances of "final discipline."[3] Further, the United States agreed that it <u>would not seek</u> medical or psychological records and reports, underlying discipline data,[4] and the balance of the materials requested in the subpoena attachment. The City rejected the United States' offer and advised that the non-public data could not be disseminated due to privacy concerns and state law.

The United States advised the City about this Court's protective Order (ECF No. 60) regarding discovery and dissemination, sent the City a copy of the Order, and informed the City of the United States' own legal and ethical obligation to protect non-public data from improper dissemination. To further address the City's concerns, the United States also offered to draft an appropriate proposed protective order for the Court's approval. The City's objections continued.

In a last attempt to avoid the current path, the United States advised the City that records of <u>public data only</u> *may* satisfy the subpoena. The United States requested to review the documents before agreeing that the subpoena had been satisfied or withdrawing the subpoena. The City demanded the United States withdraw its subpoena—essentially agreeing the subpoena had been complied with—*before* the City provided any

---

[3] The United States was also interested in employee training history but did not request that in its original attempt to negotiate compliance.

[4] Data foregone by the United States would have presumably included any underlying reports, 911 audio, body camera video, protected witness identity information, protected mandated reported identity information, supervision, supervisor portions of use of force reports, and certain juvenile arrest data.

documentation, stated that it could not provide the documents until January 14, 2022, and stated that the City would file its Motion to Quash by the close of business on January 7, 2022, if the subpoena was not withdrawn. The United States again advised the City that it was likely the public data would satisfy the subpoena, and that if that was the case, it would withdraw the subpoena (or inform the City it was satisfied). However, the United States explained that it was not in a position to represent that the public data satisfied the subpoena until after it had received and reviewed the public data. The City then filed its Motion to Quash.

## **Argument**

In its motion to quash, the City objects to *federal* subpoena compliance on two grounds: (a) "[t]he subpoena does not meet the legal requirements of: (1) relevancy; (2) admissibility; and (3) specificity;" and (b) that the Federal Rules of Criminal Procedure bend to Minnesota state law. *See* ECF No. 184 at 3-7. The City's arguments are meritless. The United States takes each in turn.

**A. The Requested Records Are Relevant, Admissible, and Specific.**

The purpose of a Rule 17 subpoena is to expedite criminal trials. *United States v. Nixon*, 418 U.S. 683, 698 (1974). To require pretrial production of documents, the requesting party must show the documents are relevant, are admissible, have been requested with adequate specificity, are not otherwise procurable in advance of trial, and are needed to properly prepare for trial. *Id.* at 699. Accordingly, relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 351 (1978). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case.

The United States subpoenaed documents from the City which pertain to witnesses who appear on the parties' witness lists. The disputed issues in this case are abundant. However, the anticipated testimony of the majority of current or former MPD employees will include their employment with MPD, including, but not limited to, their general and personal knowledge of training, use of force, discipline, and policies and procedures. The requested information from the officers' personnel files directly concerns those discrete areas. Moreover, such information could be used by either party for impeachment. Such evidence—in certain circumstances—can be admissible. *See e.g.*, Fed. R. Evid. 806 ("... The court may admit evidence of the declarant's inconsistent statement or conduct ...").

Further, given the City's compliance with eleven previous subpoenas, the United States' request is not made with speculation. The City complied with previous subpoenas for other MPD employees for the same material. During attempted negotiation with the City after the City complied with eleven subpoenas, the United States narrowed its request and removed medical and psychological information and other non-pertinent data at the behest of the City. As such, the City's assertion of speculation is baseless.

All told, the United States' subpoena complies with Rule 17 and seeks only documents which are relevant, admissible, and specific.

B. <u>**This Federal Court's Rules Trump Minnesota State Law**</u>.

> "Th[e] Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." Art. V, Para. II.

"It is axiomatic that discovery in federal court is governed not by state rules or statutes, but by the Federal Rules of Civil Procedure." *Her v. Paulos*, No. 11-cv-808 (PAM/TNL), 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012); *see also* 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2005 (3d ed. 2010) ("[E]xcept for [discovery in aid of execution and questions of privilege] it is wholly settled that discovery in a federal court is governed only by these rules and that state discovery practices are irrelevant."). The MGDPA is not "a basis to frustrate the discovery process in a lawsuit filed in *federal* court." *R.S. by and through S.S. v. Minnewaska Area Sch. Dist. No. 2149*, No. 12-cv-588 (MJD/LIB), 2013 WL 12149246, at *6 (D. Minn. Mar 20, 2013); *see also Scheffler v. Molin*, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012) (finding the MGDPA does not "trump the Federal Rules of Civil Procedure, which define what information is discoverable in a federal lawsuit . . . it is improper . . . to withhold information from proper discovery in a federal lawsuit purely on grounds that it is protected under the MGDPA."); *Her*, 2012 WL 6634777, at *5 (finding that a party, despite private information within responsive records, "may not refuse discovery requests" otherwise permissible under Rule 26 "on grounds that the MGDPA prevents [their] disclosure.").

The City has refused to comply with the Federal Rules of Criminal Procedure based on its interpretation of Minnesota state law. Minnesota state law does not, however, govern this case. Litigants in this District have previously attempted to use the MGDPA to avoid producing discovery in compliance with the Federal Rules in civil cases. Federal courts have rejected those efforts. Here, in the context of a criminal case, the result should be the same.

## Conclusion

WHEREFORE, the United States requests this Court deny the City's motion and order the City to produce the requested public and non-public data, narrowed in scope as offered by the United States and described herein, by Friday, January 14, 2022.[5]

Dated: January 10, 2022                           Respectfully submitted,

CHARLES J. KOVATS, JR.                            KRISTEN CLARKE
Acting United States Attorney                     Assistant Attorney General
                                                  Civil Rights Division

/s/ LeeAnn K. Bell                                /s/ Samantha Trepel
BY: LeeAnn K. Bell                                BY: Samantha Trepel
Assistant United States Attorney                  Special Litigation Counsel
Attorney No.: 0318334                             Attorney No.: 992377 DC

---

[5] The City has provided a proposed protective order. *See* ECF No. 185. The United States objects to the entry of this protective order, as the United States' use of the materials is governed by the federal Privacy Act of 1974, 5 U.S.C. § 552a, which prohibits the disclosure of a record about an individual absent that person's consent, or unless the disclosure is made pursuant to an authorized statutory exception. *See Howard v. Marsh*, 785 F.2d 645, 647 (8th Cir. 1986). Any discovery produced to defendants would be governed by the protective order already in place in this case. *See* ECF No. 60.