UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| United States of America,<br>      Plaintiff,<br>vs.<br><br>Tou Thao, J. Alexander Kueng, Thomas Kiernan Lane,<br><br>      Defendants | **MEDIA COALITION'S MOTION OBJECTING TO CLOSURE OF THE COURTROOM** |

American Public Media Group (which owns Minnesota Public Radio); The Associated Press; Cable News Network, Inc.; NBCUniversal Media, LLC; Star Tribune Media Company LLC; and TEGNA Inc. (which owns KARE-TV) (collectively, the "Media Coalition")[1] by and through undersigned counsel, hereby submit this Motion Objecting to the Closure of the Courtroom.

**Background**

The Media Coalition incorporates by reference the background information set forth in the Government's Motion for Public and Victim Access to Courtroom Proceedings (ECF No. 212). The Media Coalition is further aware that, as of 9:17 am today, the Court's Public Information Officer notified the undersigned by email that "Judge Magnuson's 10:00am today will be an attorneys' conference in his chambers. This is not open to the public and the courthouse remains closed." The email did not specify what would be discussed at the

---

[1] Undoubtedly, but for the need to file this motion on an emergency basis, additional media organizations would have joined in it, including many of the organizations that joined in the letter the undersigned sent the Court on January 17 expressing concern over the lack of press and public access to the trial.

conference or whether it would be conducted on the record. The Media Coalition brings this motion because it has reason to believe substantive issues regarding the admissibility of certain evidence will be discussed and decided at the conference.

I. **The Media Coalition has standing to assert its interest in access to this criminal proceeding.**

When a member of the news media objects to limits on his or her access to judicial proceedings, "the court must give him or her a reasonable opportunity to state the objection." *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983). In the Eighth Circuit, a motion is the apparent preferred procedural mechanism for objecting to limitations upon access. For example, *In re Search Warrant for Secretarial Area Outside Office of Gunn* arose after a federal district court allowed a publishing company to move pursuant to Federal Rule of Criminal Procedure 41 to unseal affidavits and other materials attached to two search warrants but then denied the motion. 855 F.2d 569, 570 (8th Cir. 1988). The Eighth Circuit observed that "[u]sually motions for public access to court proceedings or records are filed by the press in connection with pending criminal or civil proceedings." *Id.* at 572.

In *Richmond Newspapers, Inc. v. Virginia*, the case that established a First Amendment right of access to criminal trials, the appellant initially requested a hearing on a motion to vacate the trial court's closure order, which the trial judge granted, and later was allowed to intervene *nunc pro tunc*. 448 U.S. 555, 560-62 (1980); *see also, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 5 (1986) (*Press-Enterprise II*) (noting that petitioner had joined state's motion for release of transcript); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 504 (1984) (*Press-Enterprise I*) (noting that petitioner had moved for the release of a complete transcript of voir dire proceedings); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 599 (1982) (noting that newspaper had moved the court to revoke its closure order and to permit it to

intervene for the limited purpose of asserting its access rights); *United States v. Graham*, 257 F.3d 143, 145 (2d Cir. 2001) (noting that magistrate judge invited the news media to intervene on the questions of public access); *In re Associated Press*, 162 F.3d 503, 508 & n.6 (7th Cir. 1998) (citing cases and stating that "the Press ought to have been permitted to intervene in order to present arguments against limitations on the constitutional or common law right of access."); *United States v. Valenti*, 987 F.2d 708, 711 (11th Cir. 1993) ("We first note the Times's standing to intervene for purposes of challenging its denial of access to the underlying litigation, even though it is otherwise not a party."); *In re New York Times Co.*, 828 F.2d 110, 113 (2d Cir. 1987) (noting that district court treated news media as intervenors in criminal proceeding).

Accordingly, the Court should grant this motion for intervention for the limited purpose of seeking public access to court records and proceedings in this matter.

## II. "Sealing" an evidentiary hearing such that the press and public can not observe it is a closure of the courtroom that violates the First Amendment.

The First Amendment provides an affirmative, enforceable right of public access to criminal trials. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980) ("We hold that the right to attend criminal trials is implicit in the guarantees of the First Amendment."); *see also Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property"). As the Eighth Circuit has stated, "We have an open government, and secret trials are inimical to the spirit of a republic, especially when a citizen's liberty is at stake. The public, in a way, is necessarily a party to every criminal case." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006).

This First Amendment right of access extends to hearings that take place outside of the presence jury to discuss the admissibility of evidence and other matters. *In re N.Y. Times Co.*,

828 F.2d 110, 114 (2d Cir. 1987) (recognizing an established First Amendment right of access to pretrial hearings, including "a defense motion to preclude the use of certain evidence at trial pursuant to Rules 403 and 404 of the Federal Rules of Evidence"); *United States v. Criden*, 675 F.2d 550, 554 (3d Cir. 1982) ("We hold that: (1) the public has a first amendment right of access to pretrial suppression, due process, and entrapment hearings; (2) that motions for closure of such hearings must be posted on the docket to give notice to the public; and (3) that a district court, before closing a pretrial hearing, must consider alternatives to closure and state on the record its reasons for rejecting them."); *United States v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982) ("[I]t is clear that the considerations supporting the public's qualified right of access to the criminal trial itself apply as well to hearings on motions to suppress evidence."); *cf. Zenith Radio Corp. v. Matsushita Elec. Indust. Co.*, 529 F. Supp. 866, 905-06 (E.D. Penn. 1981) ("We deal here with materials that were proffered to the court and made the subject not only of an evidentiary hearing, but of an evidentiary ruling. We have concluded as a matter of law that such materials, whether or not found admissible, are part of the record for purposes of the public's right to inspect and copy, and that the record of the evidentiary hearing is public.").

To overcome the First Amendment's presumption that the courthouse doors remain open to the press and public at all stages of a criminal proceeding, the party seeking closure—here, the Court—must satisfy four distinct requirements:

1. The party seeking to restrict access must demonstrate a substantial probability of prejudice to a compelling interest. *See, e.g., Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enterprise I*, 464 U.S. at 510; *Richmond Newspapers*, 448 U.S. at 580-81.

2. The party seeking to restrict access must demonstrate that there is no alternative to adequately protect the threatened interest. *Press-Enterprise II*, 478 U.S. at 13-14; *Thunder*, 438 F.3d at 867-68.

3. Any restriction on access must be narrowly tailored. *See, e.g.*, *Press Enterprise II*, 478 U.S. at 13-14; *Thunder*, 438 F.3d at 867-68.

4. Any restriction imposed on access must be effective in protecting the threatened interest for which the limitation is imposed—a constitutional right may not be restricted for a futile purpose. *See Press-Enterprise II*, 478 U.S. at 14.

Further, there are procedural requirements beyond these substantive ones: A court may not properly restrict public access without prior notice and without making findings of fact, on the record, demonstrating that these standards have been met. *See, e.g., Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enterprise I*, 464 U.S. at 510; *Thunder*, 438 F.3d at 867-68.

Here, there has been no attempt to make the requisite findings or analyze whether the four requirements listed have been met. Any attempt to do so will fail, for the reasons stated in the Government's brief, which reasons are incorporated here by reference. In particular, and to augment the Government's arguments, there has been no showing that alternatives to closure will not adequately protect whatever unarticulated interests the Court believes are at stake. Presumably the Court is concerned about publicity surrounding inadmissible evidence. But it is a standard practice to instruct jury members not to listen to or read news reports on the case they are considering, *see* 10 Minn. Prac., Jury Instr. Guides—Criminal CRIMJIG1.02 (6th ed.). The deliverance of such an instruction here will prevent any possible influence from news reporting. Moreover, many (perhaps all) of the jurors in this case are already familiar with the events that

gave rise to the prosecution of Defendants; the state court verdict against their co-defendant Derek Chauvin; and Mr. Chauvin's decision to plead guilty to federal charges and it seems extremely unlikely that any of them have avoided exposure to the related news coverage. Thus, the notion that sealing an evidentiary hearing to discuss evidence that likely has already received a fair amount of publicity could somehow be an effective means to ensure jury impartiality is farcical. The Court will need to—must, under the First Amendment—rely on other mechanisms.

## Conclusion

For all of these reasons the Court should conduct the "meeting" this morning and all future proceedings in this matter in open Court. Moreover, it should not close any other proceeding related to these prosecutions without first giving the press and public an opportunity to be heard and making the requisite findings of fact and conclusions of law. The Media Coalition further requests that to the extent the "meeting" this morning is conducted on the record and a transcript is created that it be provided immediate access to that transcript.

Dated: January 21, 2022              **BALLARD SPAHR LLP**

                                              *s/ Leita Walker*
                                              Leita Walker, MN #387095
                                              2000 IDS Center
                                              80 South 8th Street
                                              Minneapolis, MN 55402-2119
                                              612-371-6222
                                              walkerl@ballardspahr.com

                                              *Attorneys for Media Coalition*